**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO.  4:14-CR-28(13) |
| | § | |
| | § | |
| MARK HODGES | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Mark Hodges's ("Hodges") *pro se* Motion for Compassionate Release (#974), wherein he requests that the court reduce his sentence of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) and/or the Elderly Offender Home Detention Program ("EOHDP") due to the threat of Coronavirus Disease 2019 ("COVID-19").  The Government opposes the compassionate release motion (#979).  After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.     Background

On April 26, 2016, Hodges pleaded guilty pursuant to a binding plea agreement to Count One of the Second Superseding Indictment charging him with Conspiracy to Possess with the Intent to Manufacture and Distribute 500 grams or more of a Mixture or Substance Containing a Detectable Amount of Methamphetamine of 50 grams or more of Methamphetamine (Actual), in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A).  In the Statement of Facts in Support of Plea Agreement, Hodges stipulated that he agreed to possess with intent to distribute and dispense at least 1.5 kilograms but less than 5 kilograms of a mixture or substance containing a detectable

amount of methamphetamine or at least 150 grams but less than 500 grams of methamphetamine (actual).  Hodges also acknowledged that his role in the conspiracy was to supply kilogram quantities of methamphetamine to codefendants and coconspirators during the term of the conspiracy in the Eastern and Northern Districts of Texas.  On February 22, 2017, the court sentenced Hodges to 188 months' imprisonment, to run concurrently to any future sentence imposed in the 35th Judicial Circuit Court of Dunklin County, Missouri, for possession of a controlled substance with intent to distribute, and consecutively to any future sentence imposed in Fannin County, Texas, for harassment by a person in a correctional facility, followed by a five-year term of supervised release.  Hodges is currently housed at the Federal Correctional Institution Greenville, located in Greenville, Illinois ("FCI Greenville").  His projected release date is September 7, 2027.

II.   <u>Compassionate Release</u>

On December 21, 2018, President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a

> determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate

release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, it appears that Hodges has exhausted his administrative remedies. Attached to the Government's response is Hodges's request for compassionate release, dated July 21, 2020, based on his age, 64, and underlying health issues.  Also attached to the Government's response and to Hodges's motion is the response of Warden E. Williams of FCI Greenville, dated July 31, 2020, denying his request for compassionate release.  Warden Williams states in his denial that "[a]ccording to the medical review performed by institutional staff it was determined you do not qualify for a reduction in sentence [RIS] as you do not meet RIS qualifying medical criteria."  Included in Hodges's medical records is an administrative note by F. Ahmed, M.D., dated July 29, 2020.  Dr. Ahmed indicates that he reviewed Hodges's chart and determined that he does not have a terminal diagnosis with life expectancy less than 18 months, does not have an

incurable progressive illness and is able to perform ADL (activities of daily living), has chronic illnesses requiring only conventional treatment and his age is less than 65 years, and does not qualify for RIS for medical reasons.  Although the court finds that Hodges complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to

policy statements issued by the Commission.  18 U.S.C. § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

As grounds for relief set forth in his motion, Hodges asserts that he is eligible for compassionate release because of his medical conditions:  high blood pressure, hypertension, Type II diabetes, high cholesterol, arthritis, lung disease, depression, asthma, obesity, COPD (chronic obstructive pulmonary disease), and chronic heart failure, which purportedly make him vulnerable to COVID-19.  Hodges maintains that he is currently prescribed the following medications: Atorvastatin, Lisinopril, Furosemide, Nitroglycerin, Carvedilol, Albuterol Inhalation Aerosol, Metformin, Potassium Chloride, Aspirin Modified Release, Fluoxetine, Acetaminophen, Ibuprofen, and Spiriva Tiotropium.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, as set forth in Hodges's Presentence Report ("PSR"), prepared in 2016, Hodges provided a Transit Medical Summary to Probation dated April 2016, which indicated Hodges had the following health problems:  congestive heart failure, epilepsy, COPD, insulin dependent

---

the victim.  18 U.S.C. § 3553(a).

diabetes, and constipation.   He was also prescribed the following medications:   Lisinopril, Ventolin, Omega 3, Keppra, Potassium, Lasix, and Coreg.   Probation's investigation confirms that Hodges has been diagnosed with type II diabetes, major depressive disorder, asthma, and hypertension.   Hodges's BOP medical records, dated September 22, 2020, reveal that he has also been diagnosed with hyperlipidemia, nonrheumatic aortic valve disorder, chronic kidney disease (stage 1), and cardiac murmur, but his epilepsy is in remission.   Probation further notes and Hodges's medical records verify that he is in stable condition and remains under medical supervision, and has no additional health risk factors or documented concerns.   Thus, it appears that Hodges is receiving appropriate care for his medical conditions.

BOP records further disclose that Hodges is classified as a Medical Care Level 2 inmate (stable, chronic care).   BOP's Clinical Practice Guidance explains:   Care Level 2 inmates "are stable outpatients who require clinical evaluations monthly to every 6 months; their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring; and enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."   Hence, Hodges's health concerns appear to be well-controlled by monitoring, testing, and medication.   In fact, based on records supplied by the Government, dated September 22, 2020, Hodges is housed in general population, has no medical restrictions, has a regular duty work assignment, is cleared for food service, and his current work assignment is in the tool room.

Thus, Hodges's medical summary does not meet the criteria listed above.   None of these medical conditions is terminal or substantially diminishes his ability to provide self-care.   Hodges has therefore failed to establish that a qualifying medical condition exists that would constitute

extraordinary and compelling reasons to reduce his sentence.  In any event, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Furthermore, granting Hodges compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence.  *Id.* at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.*  In the instant case, releasing Hodges after he has served just over 6 years of his 15-year sentence, approximately 42%, would similarly minimize the impact of his crime and the seriousness of his offense.

Hodges's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the

8

Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Hodges for any "other" reason.  In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Hodges's situation.  Furthermore, in view of the nature and circumstances of his offenses of conviction and his extensive criminal history, the court cannot conclude that Hodges would not pose a danger to the safety of any other person or to the community, if released from confinement.

Hodges maintains that if he contracts COVID-19, it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates.  Hodges expresses

9

concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of November 28, 2020, the figures available at www.bop.gov list 183 inmates (out of a total inmate population of 1,002) and 17 staff members at FCI Greenville as having confirmed positive cases of COVID-19, 428 inmates and 36 staff members who have recovered, and 0 inmates who have succumbed to the disease.  Thus, it appears that the facility where Hodges is housed is handling the outbreak appropriately and providing adequate medical care.

Although Hodges expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Hodges, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to

establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).  Hence, Hodges has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94.  The nature and circumstances of Hodges's offense of conviction entail his participation in a drug trafficking conspiracy involving the distribution of between 1.5 and 5 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 150 and 500 grams of methamphetamine (actual).  Hodges supplied coconspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, for distribution to others in the Eastern and Northern Districts of Texas.  During the execution of a search warrant at his hotel room in Missouri in January 2014, officers recovered methamphetamine, ammunition, drug paraphernalia, and $24,110.00 in drug proceeds.  In March 2014, Hodges received 1 kilogram of methamphetamine from a codefendant in Missouri and engaged in various recorded phone conversations that captured him discussing drug trafficking payments and transactions.  Additionally, in March 2014, Hodges traveled to Rockwall, Texas, to meet with drug associates and attempted to pick up an additional 2 kilograms of methamphetamine.  While in Rockwall,

officers conducted a traffic stop on a vehicle Hodges occupied where they discovered $2,050.00 in drug proceeds and receipts for the transfer of $5,200 of drug proceeds in the vehicle.  When searching his motel room in Rockwall, officers found methamphetamine, drug paraphernalia, and other narcotics.  The PSR indicates that Hodges purchased 1 to 2 kilograms of methamphetamine from a codefendant for six months during the term of the conspiracy.  Further, Hodges failed to accept responsibility for the instant offense by declining to discuss the information contained in his factual basis with the probation officer, denying that certain convictions listed in the PSR were his despite record evidence that they are, and threatening and then spitting into the face of a correctional officer after his arrest.  Although Hodges was sentenced to an agreed sentence of 188 months, the applicable guidelines range calculated by Probation in his PSR was 262 to 327 months' imprisonment.

Hodges has an extensive criminal history beginning in 1974, including prior convictions for theft, driving with a blood alcohol content (2), assault, delivery of a controlled substance, possession of a controlled substance (3), possession of a firearm in furtherance of a drug trafficking crime, possession with intent to deliver a controlled substance, assault of a family member causing bodily injury, fraudulent possession of a controlled substance or prescription, evading arrest with a motor vehicle, and bail jumping.  Probation's calculations reflect that he amassed 16 criminal history points.  Hodges previously failed to comply with multiple terms of release on probation, parole, and supervised release.  He has a history of mental health problems and poly-substance abuse, including the regular use of marijuana, cocaine, heroin, and methamphetamine over various time periods.  As reflected in his Inmate Discipline Data, Hodges has been sanctioned numerous times for rule violations while in the BOP, most recently in 2018

for possessing an unauthorized item and possessing drugs/alcohol.  The PSR also reveals that he was a member of a federal prison gang known as the Dirty White Boys.  In view of the nature and circumstances surrounding his offense of conviction, his extensive criminal history, and his institutional misconduct, the court cannot conclude that Hodges would not pose a danger to any other person or to the community, if released from prison at this time.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See Collins*, 2020 WL 1929844, at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 18,027 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No.

2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

To the extent Hodges seeks home confinement pursuant to the EOHDP, the authorizing statute provides that the Attorney General "shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Federal [BOP] facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 34 U.S.C. § 60541(g)(1)(A). In addition, "the Attorney General *may release* some or all eligible elderly offenders and eligible terminally ill offenders from [BOP] facilities to home detention, upon written request from either the [BOP] or an eligible elderly offender or eligible terminally ill offender." *Id*. § 60541(g)(1)(B) (emphasis added); *see Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020). In order to qualify for the pilot program, the elderly offender must generally (1) be "not less than 60 years of age"; (2) be serving a term of imprisonment that is not life imprisonment based on a conviction for an offense that does not include any crime of violence, a sex offense, an offense under Chapter 37 of Title 18 (Espionage and Censorship), or have a history of such offenses; (3) have "served 2/3 of the term of imprisonment to which the offender was sentenced"; (4) "not escaped, or attempted to escape, from a [BOP] institution"; (5) save the BOP money through his home detention; and (6) receive a determination by the BOP that he will "be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention." *Id*. § 60541(g)(5)(A). An "eligible terminally ill offender" is one who meets the criteria listed in items (2) through (6) above and who has been determined by a medical doctor approved by the BOP to be: "(I) in need

14

of care at a nursing home, intermediate care facility, or assisted living facility . . . or (II) diagnosed with a terminal illness." *Id*. § 60541(g)(5)(D).

Hodges asserts that he is eligible for home confinement under the EOHDP because he is currently 64 years old, has served 2/3 of his total sentence, was never convicted of a crime of violence or sex offense, and has not attempted to escape. In addition to misstatements concerning the percentage of his sentence that he has served and his criminal history, notably absent from his motion is any indication that the BOP has determined, "in [its] sole discretion," that Hodges does not have "a history of violence," is "at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention," or that Hodges's release to home detention "will result in a substantial net reduction of costs to the Federal Government," as required by § 60541(g)(5)(A). In fact, his BOP records dated September 22, 2020, indicate that his security classification is medium and that his recidivism risk level has also been assessed as medium. Consequently, Hodges has not shown that he meets the criteria for early release to home confinement pursuant to the EOHDP. Further,

> The statute does not give authority to the federal courts to place an offender in the [EOHDP]; that authority is given to the Attorney General. Moreover, the Attorney General is not required to place eligible offenders in the [EOHDP], but "may release some or all" of them for participation in the [EOHDP]. Consequently, . . . Congress has vested the executive branch, not the judicial branch, with the power to decide which prisoners may participate in the [EOHDP].

*Melot*, 970 F.3d at 599–600. Thus, even if Hodges met the EOHDP criteria, the court is without authority to place Hodges in the EOHDP.

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public,

meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Hodges's track record is abysmal.

In short, Hodges has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every

16

prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.    <u>Conclusion</u>

Consistent with the foregoing analysis, Hodges's *pro se* Motion for Compassionate Release (#974) is DENIED.

SIGNED at Beaumont, Texas, this 30th day of November, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE